CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED
for Danville
FEB 27 2008
JOHN F. CORCORAN, CLERK
BY: /s/ Bright
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| PATSY A. BRYANT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:07cv036 |
| | ) | |
| YORKTOWNE CABINETRY, | ) | By:  Michael F. Urbanski |
| INCORPORATED | ) |       United States Magistrate Judge |
| | ) | |
| Defendant | ) | |

### MEMORANDUM OPINION and ORDER

This matter is before the court on defendant Yorktowne Cabinetry, Inc.'s motion to prohibit further ex parte communications with Yorktowne's former employees and to remedy ex parte communications that have occurred to date. The matter was argued on February 19, 2008. For the reasons set forth herein, the motion is **DENIED**.

In this employment discrimination case, Yorktowne contends that counsel for plaintiff, Patsy A. Bryant ("Bryant"), engaged in improper ex parte telephone communications with one of its former employees, Anne Goins, questioning her about the facts of this case. Goins previously worked as Human Relations Manager for defendant in its Danville facility and ostensibly has knowledge of the facts concerning Bryant's employment at Yorktowne and the circumstances of her termination. Yorktowne seeks to discover the notes of this interview, disqualify counsel for plaintiff and prohibit any further former employee interviews.

For its argument that ex parte communications with Goins are prohibited, Yorktowne relies principally on the opinion in Armsey v. Medshares Management Services, Inc., 184 F.R.D. 569 (W.D. Va. 1998), where the court prohibited plaintiff's counsel from communicating with former employees of defendant corporation. The court reasoned that such a prohibition was

appropriate because plaintiff's counsel in that case "informed the court that it seeks to speak to each of these former employees because Plaintiffs believe that they can impute liability upon [Defendant] through the statements, actions or omissions of these former employees." 184 F.R.D. at 574. Under these circumstances, the court denied plaintiff's request to communicate on an ex parte basis with such former employees.

At the hearing, Bryant sought to distinguish Armsey by representing that she does not intend to impute liability on Yorktowne through the statements, actions or omissions of Goins or other former employees, but was simply seeking to discover the facts of the case, including the identities of persons involved. Bryant argued at the hearing that there has been a great deal of turnover at the Yorktowne Danville facility over the past two years and counsel made the call to Goins to find out the facts of the case and the identities of persons responsible for the employment decisions regarding her.

In addition, Bryant's counsel argue that the telephone calls to Goins were ethically proper under Virginia Rule of Professional Conduct 4.2, which provides as follows:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Comment 7 to Virginia Rule 4.2 explains that in the case of an organization, this prohibition extends to members of the "organization's 'control group' as defined in Upjohn v. United States, 449 U.S. 383 (1981), or persons who may be regarded as the 'alter ego' of the organization." Va. Rules of Professional Conduct, Rule 4.2, Comment 7.

As regards former employees, Comment 7 to Virginia Rule 4.2 provides in clear language that "[t]he prohibition does not apply to former employees or agents of the organization, and an

2

attorney may communicate ex parte with such former employee or agent even if he or she was a member of the organizations's 'control group.'" Id.

Virginia Legal Ethics Opinion 1670 further addresses the issue of contact with former employees of adverse corporate parties. This opinion, issued in 1996 under the former Disciplinary Rule 7-103(A)(1), concluded that "it is ethically permissible for an attorney to communicate directly with the former officers, directors and employees of an adverse party unless the attorney is aware that the former employee is represented by counsel." This ethics opinion left room for further refinement of this rather bright line rule allowing contact with former officers, directors and employees, stating that the committee chose to "leave specific rulings involving other rules of ethical conduct to the presiding trial judges of Virginia based upon the facts presented before them."

Consistent with the bright line rule set forth in the Virginia Rules of Professional Conduct, a majority of courts considering the application of the ethical prohibition against communicating with represented persons of adverse interest have generally held that this prohibition does not apply to prohibit communications with former employees. See Valassis v. Samuelson, 143 F.R.D. 118, 212 (E.D. Mich. 1992); Right of Attorney to Conduct Ex Parte Interviews with Former Corporate Employees, 57 A.L.R. 5th 633, § 2[a] (2008).

At the same time, courts consistently have enforced a prohibition against ex parte communications with former employees of adverse corporate parties where the contacts involve privileged or confidential information. Virginia applies the same standard.

In a March 29, 2001 Legal Ethics Opinion 1749, issued three years after Armsey was decided, the Virginia State Bar Committee on Legal Ethics reiterated that Virginia ethics rules allow a lawyer to "contact the former employee of the opposing party regarding the litigation,"

3

but explained that other Rules of Professional Conduct impose content restrictions prohibiting inquiries into confidential and privileged communications and information. While not addressed in LEO 1749, other ethical rules impact on contact between counsel and witnesses such as former corporate employees. Specifically, Rule 4.3 concerns dealing with unrepresented persons, and Rule 4.4 prohibits counsel from using "methods of obtaining evidence that violate the legal rights of such a person."

At the February 19, 2008 hearing, counsel for Bryant represented that no inquiries into privileged or confidential areas were made, and review of the notes of counsel's telephone conversations with Goins produced for in camera review confirm that they did not contain any confidential or privileged information.[1]

Yorktowne argues that Armsey requires a blanket prohibition against ex parte contact with all former corporate employees, especially those in management positions, but Yorktowne seeks to stretch Armsey beyond its facts. It is plain that in Armsey, the court based its decision "in large part on the fact that Plaintiff's counsel has informed the court that they believe that each of these witnesses has knowledge or has made statements or has taken actions which should be imputed to Medshares." 184 F.R.D. at 573. Bryant stated in open court that she did not intend to impute to Yorktowne anything said or done by Goins nor did the communication extend to privileged matters. As such, Armsey does not support the broad prohibition Yorktowne seeks in this case.

In Armsey, the court aptly recognized the vast divergence of opinion in state and federal courts in other jurisdictions on the issue of ex parte communications between counsel and former management employees of an adverse corporate party. 184 F.R.D. at 573. Citing as examples

---

[1]Following in camera review, the copy of Bryant's counsel's notes provided to the court were filed under seal.

4

two cases from federal courts in Massachusetts and Kansas, the court noted that these cases have held that such contacts should be prohibited where the former employees' acts or omissions may be imputed to the corporation. Id. (citing Amarin Plastics, Inc. v. Maryland Cup Corp., 116 F.R.D. 36, 40 (D. Mass. 1987); Chancellor v. Boeing Co., 678 F. Supp. 250, 253 (D. Kan. 1988)). The court also cited cases from Florida, Montana and Maryland for the proposition that "there should be no ex parte communications with former employees who held managerial responsibilities with a represented corporate party." Id. (citing Rentclub, Inc. v. Transamerica Rental Finance Corp., 811 F. Supp 651, 658 (M.D. Fla. 1992); Porter v. Arco Metals Co., 642 F. Supp. 1116, 1118 (D. Mont. 1986); Camden v. State of Maryland, 910 F. Supp. 1115, 1122 (D. Md. 1996)). Over the ensuing years, however, these decisions have met with a substantial degree of disapproval and disagreement, and, indeed, the ethical rules under which several of these cases were decided have been revised.[2]

---

[2]The Amarin Plastics decision has been criticized or questioned numerous times due to the subsequent clarification of Model Rule 4.2 by the American Bar Association. See, e.g., Cram v. Lamson & Sessions Co., 148 F.R.D. 259, 263-64 (S.D. Iowa 1993) ("The decisions construing Rule 4.2 as applicable to former managerial employees . . . were decided prior to March 22, 1991, when the American Bar Association Committee on Ethics and Professional Responsibility ("the Committee") issued ABA Formal Opinion 91-359. In this opinion, the Committee concluded that neither Model Rule 4.2 nor its Comments extend to former employees. . . . Since its publication, several courts have adopted the conclusion reached in the opinion and have held that Model Rule 4.2 does not bar ex parte communication with former employees."). See also Shearson Lehman Bros., Inc. v. Wasatch Bank, 139 F.R.D. 412 (D. Utah 1991) (holding that the March, 1991 ABA formal opinion regarding Model Rule 4.2 does not prohibit ex parte communications with former employees); Fu Inv. Co. v. Commissioner, 104 T.C. 408, 412 (1995) ("Consistent with ABA formal op. 91-359, the majority of jurisdictions considering the issue have held that model rule 4.2 generally does not apply to preclude an attorney from engaging in ex parte contacts with the former employees of a corporate party.").
  The Chancellor decision has also met with similar criticism and has been criticized or questioned numerous times. See, e.g., Aiken v. Business & Indus. Health Group, 885 F. Supp. 1474 (D. Kan. 1995) (holding that ex parte contact with former employees is not prohibited by Model Rule 4.2 despite the holding by the Chancellor court, because that decision was made prior to the issuance of ABA Formal Opinion 91-359 which makes clear that contact with former employees is not prohibited); B.H. v. Johnson, 128 F.R.D. 659 (N.D. Ill. 1989) (holding that plaintiff could conduct ex parte interviews with former employees, but that such information could not be used to impute liability to defendant corporation). See also Shearson Lehman, 139 F.R.D. at 417.
  Porter was also decided prior to ABA Formal Opinion 91-359 and courts citing to Porter quickly distinguish or criticize the decision because of the March 1991 ABA Formal Opinion. See, e.g., United States v. W.R. Grace, 401 F. Supp. 2d 1065, 1068 (D. Mont. 2005) ("Presumably, Local Rule 83.13 changed when the ABA Model Rules changed, meaning it is entirely appropriate for the Court to reconsider the reach of Model Rule 4.2's anti-contact rule as it relates to former employees, and to so without any deference to Porter . . . both of which are based on a prior version of the Model Rules. . . . As noted above, Comment 7 to Model Rule 4.2 states

Likewise, Armsey was decided before 2002, at which time neither the text nor comments to Model Rule 4.2 specifically addressed former employees. Instead, Comment 4 to the pre-2002 Rule 4.2 was silent as to former employees, stating only as follows:

> In the case of an organization, this Rule prohibits communications by a lawyer for another person or entity concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Nothing in the text or comment to old Model Rule 4.2 addresses the propriety of contact between an attorney and a former employee of the opposing corporate party. However, in ABA Formal Opinion 91-359, issued March 1991, the American Bar Association Committee opined that Rule 4.2 does not extend to former employees.

---

unequivocally, 'Consent of the organization's lawyer is not required for communication with a former constituent.' Neither the text nor the comments of Model Rule 4.2 make any effort to distinguish between former managerial employees and former 'lower echelon' employees."). See also Action Air Freight, Inc. v. Pilot Air Freight Corp., 769 F. Supp. 899, 903-04 ("We find that Rule 4.2 permits defense counsel to make ex parte contacts with the former employees currently working for [plaintiff]. Opposing counsel may inquire into the underlying facts giving rise to the dispute but must refrain from soliciting information protected by the attorney-client relationship."); Fu Inv. Co., 104 T.C. at 413.

 Courts have also disagreed with Rentclub, Inc.'s test for former managerial employees. See, e.g., NAACP v. Fla., 122 F. Supp. 2d 1335, 1341 (M.D. Fla. 2000) (holding that plaintiff could make ex parte contact with former employees of defendant within the bounds of applicable ethical and procedural rules as well as court delineated guidelines); Reynoso v. Greynolds Park Manor, 659 So. 2d 1156 (Fla. Dist. Ct. App. 3d Dist. 1995) (holding, in opposite to Rentclub, Inc., that there is no prohibition against ex parte communications with former employees under Model Rule 4.2 and the analogous state rule); Carnival Corp. v. Romero, 710 So. 2d 690, (Fla. Dist. Ct. App. 5th Dist. 1998) (finding that the decision in Rentclub Inc. was made prior to the Supreme Court of Florida's decision in H.B.A. Management, Inc. v. Estate of Schwartz, 693 So. 2d 541 (Fla. 1997) which explicitly allows ex parte contact with former employees); see also Packard Bell NEC, Inc. v. Aztech Sys., 2001 U.S. Dist. LEXIS 11194 (C.D. Cal. Jan. 22, 2001) (noting that the analogous California Rule of Professional Conduct allows ex parte contact with former employees as the text of the rule only contemplates current employees).

 Likewise, the Camden decision has been strongly criticized or distinguished by a number of courts, including federal district courts in Maryland. See Davidson Supply Co. v. P.P.E., Inc., 986 F. Supp. 956, 958 (D. Md. 1997) (disagreeing strongly with the Camden decision and holding that Rule 4.2 does not prohibit contact with former employees); Sharpe v. Leonard Stulman Enters. Ltd. Pshp., 12 F. Supp. 2d 502, 507 (D. Md. 1998); Fleetboston Robertson Stephens, Inc. v. Innovex, Inc., 172 F. Supp. 2d 1190, 1995 (D. Minn. 2001); Olson v. Snap Prods., Inc., 183 F.R.D. 539, 544 (D. Minn. 1998).

6

Case 4:07-cv-00036-JLK-mfu Document 20 Filed 02/27/08 Page 6 of 10 Pageid#: 113

Consistent with this 1991 ABA Formal Opinion, Comment 7 to the ABA Model Rule 4.2, as revised in 2002, expressly exempted former employees from the prohibition against communicating ex parte with represented parties, as follows:

> In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. **Consent of the organization's lawyer is not required for communication with a former constituent. . . . In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization.**

(Emphasis added). Comment 7's exclusion of former employees is a broad one. As the court in United States v. W.R. Grace, 401 F. Supp. 2d 1065, 1069 (D. Mont. 2005), recognized, "[n]either the text nor the comments of Model Rule 4.2 make any effort to distinguish between former managerial employees and former 'lower echelon' employees."

While Comment 7 of the Model Rule makes no distinction between managers and line workers, the Virginia version of Rule 4.2 is even clearer and eliminates the possibility of drawing such a distinction, specifically providing that "an attorney may communicate ex parte with such former employee or agent even if he or she was a member of the organization's 'control group.'"

There are a number of countervailing policy considerations discussed in the many cases on this subject, and as regards former corporate employees, the court in Polycast Technology Corp., v. Uniroyal, Inc., 129 F.R.D. 621, 626 (S.D.N.Y. 1990), identified two that come into play: "the need to protect privileged communications and the desire to protect the enterprise from liability-creating statements obtained through the greater skill of the lawyer." Id. Other aspects of the Virginia Rules of Professional Conduct seek to address these issues. The content

7

restriction set forth in Virginia LEO 1749 plainly protects the corporate interest in privileged communications, and Rules 4.3 and 4.4 seek to prevent overreaching or exploitation by counsel dealing with unrepresented former employees. Further, under Federal Rule of Evidence 801(d)(2)(D), an employee's statement can be used against the employer as an admission only if it is made during the existence of the relationship and concerns a matter within his agency or employment. Obviously, statements made by former employees after the termination of their employment cannot constitute corporate admissions under this rule. See, e.g., Bouygues Telecom S.A. v. Tekelec, 473 F. Supp. 2d 692, 695-96 (E.D. N.C. 2007) ("Rule 801(d)(2) . . . allows for statements to be admissible where there is a requisite showing of an agency or other similar continuing direct relationship between the employer and the individual making the statement.").

There are at least three additional policy considerations that are left out of the Polycast calculus. First, as this issue is an ethical one, it is critical to provide clear guidance to practicing lawyers. Lawyers need to know where the electrified third rail lies. The bright line rule set forth in the text and comments to Virginia Rule 4.2 serves this purpose. Indeed, any lack of clarity in this area can only serve to foster more discovery disputes requiring the parties and the courts to expend resources to resolve. Second, requiring discovery of former employees only through formal means will needlessly raise the cost of litigating with corporate parties. Third, the court in Frank v. L. L. Bean, Inc., 377 F. Supp. 2d 233, 238 (D. Me. 2005), appropriately inquired as to "why the onus should not be on counsel for the witness' former employer to offer him or her counsel," and suggested that "[s]uch efforts could be undertaken by defense counsel as a matter of course when a plaintiff seeks to hold a corporate defendant vicariously liable for the wrongful acts of a former employee."

8

In sum, the court believes that the approach taken by the Virginia State Bar Committee on Legal Ethics and the Rules of Professional Conduct strikes the correct balance between efficient and appropriate discovery, protection from overreaching by counsel in dealing with unrepresented persons, and the protection of a corporate party's privileged and confidential information.[3] Thus, although the Rules allow communication with former corporate employees, including those with managerial responsibilities, opposing counsel must tread very carefully to avoid discussing information which "may reasonably be foreseen as stemming from attorney/client communications," Virginia LEO 1749, or to "use methods of obtaining evidence that violate the legal rights of such a person." Va. R. Prof'l Conduct 4.4.

Accordingly, because Goins is a former employee of Yorktowne who is not represented by counsel and the notes of the communications between Bryant's counsel and Ms. Goins reflect that the communication did not concern confidential or privileged matters, counsel for Bryant were permitted to communicate with Goins, Yorktowne's former Human Relations Manager, about the facts of this case. The fact that Bryant does not seek to impute Goins' statements, conduct or actions to Yorktowne distinguishes this case from <u>Armsey</u> and adds further support to the propriety of Bryant's counsel's actions.

Under the following guidelines, Bryant's counsel may communicate <u>ex parte</u> to other former employees of Yorktowne.

1. Upon contacting any former employee, plaintiff's counsel shall immediately identify himself as the attorney representing plaintiff in the instant suit and specify the purpose of the contact.

---

[3] See <u>Davidson Supply Co., Inc. v. P. P. E., Inc.</u>, 986 F. Supp. 956, 958 (D. Md. 1997) (Where the court suggested that any changes to Maryland's version of Rule 4.2 "should be made by a duly promulgated amendment to the rule itself, rather than by the gloss of case law.").

9

2. Plaintiff's counsel shall ascertain whether the former employee is associated with defendant or is represented by counsel. If so, the contact must terminate immediately.

3. Plaintiff's counsel shall advise the former employee that (a) participation in the interview is not mandatory and that (b) he or she may choose not to participate or to participate only in the presence of personal counsel or counsel for the defendant. Counsel must immediately terminate the interview of the former employee if he or she does not wish to participate.

4. Plaintiff's counsel shall advise the former employee to avoid disclosure of privileged or confidential corporate materials. In the course of the interview, plaintiff's counsel shall not attempt to solicit privileged or confidential corporate information and shall terminate the conversation should it appear that the interviewee may reveal privileged or confidential matters.

5. Plaintiff shall create and preserve a list of all former employees contacted and the date(s) of contact(s) and shall maintain and preserve any and all statements or notes resulting from such contacts, whether by phone or in person, as they may be subject to in camera review to ensure compliance with this Order.

It is so **ORDERED**.

Enter this 27th day of February, 2008.

_____
Michael F. Urbanski
United States Magistrate Judge