IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| PATSY A. BRYANT, | Case No. 4:07CV00036 |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| YORKTOWNE CABINETRY, INC., | |
| Defendant. | By: Jackson L. Kiser<br>Senior United States District Judge |

Before me is Defendant's *Motion for Summary Judgment* and Plaintiff counsel's *Motion to Withdraw as Counsel*. For the reasons below, I will **GRANT** Defendant's *Motion for Summary Judgment*.[1]

## I. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Construing the facts in the light most favorable to the non-moving party means that I largely rely on Patsy A. Bryant's account without judging her credibility, as revealed in her deposition testimony and affidavit. Defendant has also provided its own testimony from depositions, and I must accept this evidence where it is undisputed.

Bryant began working for Yorktowne in the maintenance department of Yorktowne's manufacturing facility on December 21, 2005, and was terminated from her employment on November 3, 2006. Bryant held various non-manufacturing jobs prior to her employment with

---

[1] I denied Plaintiff's counsel's motion to withdraw as counsel at the hearing on this matter on April 11, 2008, from the bench. It would have been unduly prejudicial to both Plaintiff and Defendant to allow withdrawal without a stronger showing of cause than a contractual dispute between attorney and client. This is particularly true when the motion to withdraw is tardily made by counsel – a mere two days before a critical hearing on summary judgment in the case they have undertaken to litigate on behalf of Plaintiff.

Yorktowne (including farming, painting, security, construction, and animal control positions) and did not possess a post-secondary degree. On June 16, 2006, Bryant was promoted to the position of Area Lead in the finishing department at Yorktowne, primarily working the second shift.

In both August and September of 2006, Bryant asked Ms. Anne Goins, the Human Resources Manager ("Goins"), to be promoted to Line Lead. She claims she had already been performing the duties of a Line Lead for several months, bereft of the title and commensurate salary accorded to that position in the company hierarchy. There were only two Line Leads at the time, both for the first shift, and both of them were male – Gary Jones and Richard Parker. Bryant sought to be the Line Lead for the second shift in the finishing department. Due to the lack of a Line Lead for second shift, Bryant claims to have assumed those duties as a *de facto* Line Lead from June to September of 2006. It is disputed whether there was an opening for a second shift Line Lead. Bryant claims that David Harmon, a Group Lead (a higher position in the company than Line Lead), told her that there was such an opening and that she should apply for it because she was already doing the job. Yorktowne strenuously insists that there was no such opening until roughly two months after Bryant's termination, when it unquestionably began hiring new Line Leads for the second shift.

According to Bryant, when she spoke with Goins in August 2006 about promotion to Line Lead, Goins told Bryant that she was not ready for the position. A month later, in September, when Bryant again approached Goins about the position, Goins told her that Line Leads had to have college degrees in order to be considered. Bryant then asked about taking college course work, and Goins told Bryant to speak to her again when Yorktowne had started a

Page -2-

educational benefits program. Bryant claims that she was told the same story by Cheryl Crews, a fellow Area Lead who applied for a Line Lead position at the same time, and was also told that she would need a college degree. Bryant also claims to have had a conversation with Richard Parker (Line Lead, first shift) in which he said, with regard to her becoming a Line Lead, to "forget it," and that Bryant was not "built right," which she took to mean was because of her sex.

At some point in October 2006, Bryant was named "Area Lead of the Year" and given a plaque commemorating her award. It is disputed how often Bryant was absent from work, but it appears undisputed that on October 23, 2006, Bryant was informed by a written warning and a meeting with a supervisor that she had accumulated 5 attendance points for absenteeism.

On October 25, Goins asked Bryant to access the company electronic time-attendance records system and print out a list of all the time taken by its plant employees relating to vacation and sick time. Bryant's records were changed in the system, with certain sick days becoming vacation days. It is undisputed that this changing of records which were already in the system alerted the company's Information Technology ("IT") department, the employees of which promptly informed Yorktowne's management.

A group of four managers or supervisors then confronted Bryant in a meeting, where they accused her of altering company records without permission. Bryant claims that she always admitted to making the changes, but that she had tacit approval from Goins, because Goins was aware of the errors that she was actually correcting in the system with respect to her sick days and vacation days. Yorktowne insists that Bryant initially denied making the changes, and that the company had conclusively determined that someone using Bryant's login had made the changes. Regardless, in deposition testimony, Bryant admitted to making two of the three

Page -3-

changes she was accused of, but she claims that they were made at the direction of Goins, who has denied giving such an order in her own deposition testimony.[2]

Bryant specifically admits that she changed a vacation day to a sick day twice in the system, in each of the months of September and October, 2006. A vacation day that she took in May was erased from her attendance records, but Bryant claims she does not know how that happened. She also claims that more than one person had access to her password for data entry into the system, including Mike McElrath. It is notable that after the change to Bryant's records, she had four "attendance points" rather than five. After earning five or more attendance points for tardiness or missing work, employees become ineligible for promotion, according to uncontested company policy.[3]

Around October 25, 2006, Bryant was suspended and Yorktowne began an investigation into her alleged changing of company records in the time-attendance system. The decision-makers for the suspension, and for Bryant's eventual termination on November 3, 2006, were Anne Goins, Seth Neuhauser, and Bob Thompson, although it appears that Mike McElrath was present as well. On November 3, Bryant was terminated and ceased employment with Yorktowne.

---

[2] Goins is no longer an employee of Yorktowne. Plaintiff's attempt to interview her in preparation for this lawsuit caused Defendant to file a motion prohibiting *ex parte* contact with all its former managerial employees. Magistrate Judge Urbanski denied this motion, ruling that counsel for Bryant could contact former employees of the company under Virginia ethics rules, so long as they identified themselves as such and did not seek disclosure of confidential or privileged information. *Bryant v. Yorktowne Cabinetry, Inc.*, 2008 U.S. Dist. LEXIS 14823 (W.D. Va. Feb. 27, 2008) (Urbanski, J.).

[3] Bryant claimed at the hearing on this motion that she had not heard of this company attendance policy for promotions until just before she was suspended.

On May 20, 2007, Bryant filed a "Charge of Discrimination" form with the Virginia Council on Human Rights and the EEOC. It is the unchallenged testimony from Bryant that a staff member of the EEOC typed her Charge for her.[4] The charge stated the following particulars in the "explanation" section:

> (1) I was an Area Leader and had been employed by [Yorktowne] since December 29, 2005. In approximately September 2006, I was denied promotion to the Line Lead position in the Human Resources Office and educational benefits to attend college. On November 3, 2006, my employment was terminated.
>
> (2) [Anne Goings], Human Resources Manager, told me that I was not qualified for the Line Lead position because I do no [sic] have a college degree. My employment was terminated after I was accused of falsifying company documents.
>
> (3) I believe I was denied promotion to Line Lead and educational benefits because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe I was discharged in violation of the Americans with Disabilities Act of 1990, as amended.

On June 23, 2007, upon the request of Bryant, the EEOC issued a "Right to Sue" letter.

Bryant filed suit against Yorktowne on September 5, 2007, in this Court, alleging both that Yorktowne failed to promote her to a Line Lead position based on her sex, and also that it had discriminated based on sex in terminating her employment, both in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Bryant appears to have dropped her initial EEOC claim of disability discrimination, as well as her claim that she was discriminated against when

---

[4] This is a common practice at the EEOC. *Fed. Express Corp. v. Holowecki*, 128 S. Ct. 1147, 1166-67 (2008) (Thomas, J., dissenting) (describing the general EEOC intake process, and confirming that it is common for EEOC investigators to draft the official charge on behalf of complainants). I have serious reservations about Defendant's argument to the Court that I should dismiss Plaintiff's termination claim based on a narrow construal of a Charge form that was not even written by the Plaintiff. As I state below, however, this issue is moot.

she was denied educational benefits for attending college, since these claims do not appear in her complaint.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247- 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir. 1987). Nevertheless, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate; that is, the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III.  DISCUSSION

Plaintiff has pressed two claims in this case: (1) that Yorktowne discriminated against her on the basis of sex when it twice denied her promotion to the Line Lead position; and (2) that Yorktowne discriminated against her on the basis of sex when it suspended her from her job, and

shortly thereafter, terminated her employment.[5] In considering the statutory language of Title VII, the applicable case law, and the undisputed facts in this case, I find that Plaintiff cannot show enough evidence for either claim such that a reasonable jury could return a verdict in her favor.   **A.**   ***Plaintiff's Failure to Promote Claim under Title VII***

The law under Title VII is relatively clear where a plaintiff alleges that her employer failed to promote her on the basis of sex, a claim of disparate treatment. A plaintiff may proceed either by presenting direct evidence of discrimination, or more commonly, by using the circumstantial evidence and burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Because Bryant has proffered no direct evidence that Yorktowne failed to promote her on the basis of sex, I evaluate this case under the latter circumstantial framework.

Plaintiff first bears the burden to make out a prima facie case of sex discrimination. *Hux v. City of Newport News*, 451 F.3d 311, 314 (4th Cir. 2006). For a failure to promote case, the plaintiff bears the burden to prove the following: (1) she was a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

If a plaintiff can make out this prima facie case, then a presumption of discrimination is

---

[5] The Defendant has also argued that the termination claim is beyond the scope of the original EEOC charge, and that therefore Plaintiff did not properly exhaust her administrative remedies such that she could bring suit on it. This issue is moot given the disposition of the case.

Page -7-

established, and a burden of production shifts to the defendant to articulate a legitimate, non-discriminatory rationale, by means of admissible evidence, for its rejection of plaintiff's bid for promotion. *Burdine*, 450 U.S. at 253-56 (describing in detail the burden on a defendant at this stage); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43 (2000). If the defendant meets this burden, then the presumption of discrimination simply vanishes. *See Reeves*, 530 U.S. at 142-43. The plaintiff then bears the ultimate burden to prove either that the actual motivation for the adverse employment action is a discriminatory ground, or that the explanation offered by the defendant is a pretext for discrimination. *Id.* at 143.

In beginning the legal analysis of this claim, I note that the burden on a plaintiff for making out a prima facie case under this framework is "not onerous," but nevertheless, it serves the "important function" of eliminating the most common nondiscriminatory reasons for Defendant's adverse employment decision. *Burdine*, 450 U.S. at 253-54. However, Bryant simply cannot make out a prima facie case for her failure to promote claim. Bryant is clearly a member of a protected class, as a female, and she clearly applied for a promotion to a specific position;[6] but she cannot show that she was even minimally qualified for the position to which she sought promotion. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 273-74 (7th Cir. 2004) (plaintiff failed to establish prima facie case of a discriminatory failure to promote her where she had consistently low assessment scores on employer's tests); *see also* 1 B. LINDEMANN & P. GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 1132-38 (4th ed. 2007).

---

[6] The parties dispute whether a Line Lead position even existed for Bryant to be promoted to on the dates when she spoke with Goins. Given that Yorktowne admits that it hired Line Leads for the second shift subsequent to Bryant's termination by only a few months, this is a genuine issue of material fact that the Court cannot decide at the summary judgment stage. However, it does not affect the rest of my analysis of Plaintiff's prima facie case.

Bryant had, at best, less than one year of experience in the manufacturing or woodworking industries, even less management experience in these industries, and no collegiate course work in either field. In contrast, it is the uncontradicted evidence that the least experienced person hired for a Line Lead position, in August 2007, was Fannye (La'Tasha) Hunt. Hunt had one year of management experience, 11 years of experience in the manufacturing industry generally, and some college course work. Indeed, every other Line Lead hired before and after her termination had more experience and education in these fields than Bryant did. And it is uncontested that once Yorktowne began hiring more Line Leads after Bryant's dismissal, the company hired some women for the position, in contrast to Bryant's contention that Yorktowne had a policy of never promoting women.

To paraphrase the *Burdine* court, one of the most common and obviously nondiscriminatory reasons for declining to promote an individual is the employer's judgment that she is not objectively qualified for the position she seeks by the employer's own standards. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir. 2005) (plaintiff cannot substitute her opinion of appropriate qualifications for that of the employer); *Evans*, 80 F.3d at 960-61 ("it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff" (*quoting Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980))). Even if I decided that Bryant could satisfy her prima facie case, her complete lack of evidence negating Yorktowne's legitimate, nondiscriminatory rationale for denying her promotion would doom her claim at the "pretext" phase, under the *McDonnell Douglas* framework.[7] Thus,

---

[7] Many failure to promote cases disputing the qualifications of the plaintiff relative to the employer's requirements are resolved at the "pretext" phase of the *McDonnell Douglas* framework. However, where the plaintiff's qualifications for the sought-after position are not

Bryant's failure to present evidence that her qualifications were anywhere close to the minimum level of experience or education of the other Line Leads hired by Yorktowne is fatal to her claim.

### B. Plaintiff's Termination Claim under Title VII

Since Bryant asserts no direct evidence of discrimination in relation to her suspension and dismissal, I again analyze this case under the *McDonnell Douglas* framework. In a termination case, the plaintiff must show the following to establish her prima facie case: (1) she was a member of a protected class; (2) she was discharged from employment; (3) at the time of discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) following her discharge, she was replaced by an individual of comparable qualifications outside the protected class. *See Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993).

I assume, *arguendo*, that Bryant can probably make out a prima facie case of discriminatory termination on the facts as construed in her favor. She is part of a protected class (female), suffered an adverse employment action (suspension followed by termination), and she was performing her job adequately and satisfactorily at the time prior to her suspension for violating company rules. Although admittedly only on the basis of her own affidavit and deposition testimony, the series of circumstances she describes could give rise to an inference of discrimination by a reasonable jury, satisfying the fourth prong of her prima facie case, even if she cannot show she was replaced by a male for her Area Lead position. *See Williams v. Trader Publ'g Co.*, 218 F.3d 481, 485 (5th Cir. 2000) ("although replacement with a non-member of the protected class is evidence of discriminatory intent, it is not essential to the establishment of a

---

even remotely near the level of "minimally qualified" for that position, it is appropriate to rule that plaintiff has not satisfied her prima facie case, absent evidence showing that the qualification requirements of the employer are a sham. *See Dandy*, 388 F.3d at 273-74.

prima facie case under Title VII"); *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 355-56 (3d Cir. 1999) (same).

Assuming she can satisfy her prima facie case, Yorktowne offers its nondiscriminatory rationale in response. That rationale is that, after an investigation conducted in good faith, the company found that Bryant was falsifying her time-attendance records in the company system. Under applicable company policy, this leads to a suspension, an investigation, and then termination if warranted. It is undisputed that actions taken with Bryant's login on the system, on a day when she was ordered to enter the system to perform the task of generating a time-attendance report, led to an unauthorized change in her personal time-attendance records. The IT personnel at Yorktowne then informed management, and there is no dispute about the procedures that followed, other than that Bryant did not feel as though she was being adequately heard at the meeting where she was suspended. Bryant eventually admitted to making some, but not all, of the changes, without permission of the company, and without telling management of her actions. Thus, Yorktowne certainly satisfies its burden of production and the presumption of discrimination simply vanishes from this case.

At this point, Bryant can only proceed to a trial on the merits if she can rebut the nondiscriminatory rationale provided by Yorktowne for its decision to terminate her. Bryant, however, offers virtually no evidence of pretext. In fact, evidence of pretext is largely foreclosed to her because she admits outright in her deposition testimony that she made the unauthorized changes. She contends that she was tacitly authorized to make such changes, a fact for which she has no supporting testimony except a self-serving affidavit. Without more, her contention that her employer tacitly authorized her to make these changes is not enough to forestall summary

judgment against her. *See Sunstrom v. Schering-Plough Corp.*, 856 F. Supp. 1265, 1272 (E.D. Tenn. 1994) ("Even if plaintiff did not falsify the company records as charged, an employer successfully rebuts a prima facie case of disparate treatment by showing that it honestly believed that the employee committed the infraction."); *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989) (granting summary judgment for employer where an "admission of misconduct provides sufficient foundation for an employer's good faith belief that an employee has engaged in misconduct."); *Mack v. Aiken Elec. Coop.*, 1992 U.S. App. LEXIS 29965, *7-8 (4th Cir. November 13, 1992) ("mere incantations of the [employer]'s improper motive do not insulate [plaintiff] from summary judgment"); *see also Jones v. Los Angeles Cmty. Coll. Dist.*, 702 F.2d 203, 205 (9th Cir. 1983) (employer could rely on, *inter alia*, dishonesty in the use of sick time, as a legitimate, nondiscriminatory reason for dismissal).

Bryant also claims that another Area Lead, Joseph Wilson, changed his records in the system after getting a flat tire one day so that he would not have his "attendance points" increased for being late to work. She also claims that Wilson was not himself disciplined by Yorktowne. She presents very little evidence for this event, and even if her story were entirely believed by a jury, his supposed infraction is quite different from Bryant's known infraction. *See Mack*, 1992 U.S. App. LEXIS 29965, at *7-8 (requiring admissible evidence that misconduct of coworkers was known of and treated differently from similar misconduct by plaintiff). In the case of Wilson, he is alleged to have bragged to Bryant or Cheryl Crews that he falsified his time. In her affidavit, Goins states that as HR Manager, she could not recall a case of any other Area Leads ever falsifying their records. Bryant has no evidence that Yorktowne management was ever aware of Wilson's deceit, and Wilson is not alleged to have confessed his dishonesty to

management. Whereas in Bryant's case, she admitted to falsifying her own time for multiple days when she was briefly accessing the records system for all employees.[8]

In short, there is no more than a scintilla of evidence put forward by the Plaintiff here to disbelieve the Defendant's legitimate, nondiscriminatory rationale for firing her, or to suggest that the Defendant's motivation was discriminatory. Therefore, I must grant summary judgment to the Defendant on this claim as well. *See Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 298 (4th Cir. 2004) (*en banc*) (summary judgment granted to defendant where plaintiff failed to come forward with evidence showing that her termination for rules infractions was a pretext for discrimination on the part of the employer's relevant decision-makers), *cert. dismissed*, 2005 U.S. LEXIS 1381 (U.S. Jan. 25, 2005).

## IV.   CONCLUSION

For the foregoing reasons, I will **GRANT** summary judgment for the Defendant. Judgment will be entered for the Defendant, and this case will be dismissed from the active docket of this Court. The clerk will be directed to send a copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record.

Entered this 21st day of April, 2008.

s/Jackson L. Kiser<br>
Senior United States District Judge

---

[8] Bryant also makes similar allegations concerning time alterations by Mike McElrath. However, she presents even less evidence for this than she does for Wilson's alleged conduct, and furthermore does not provide a basis for believing that McElrath actually did anything that violated company policy. All she alleges, at base, is that he was not within the plant many times during the day. But she cannot say what he was doing, or what his time schedule was as a salary exempt employee. In short, she offers no more than uncorroborated speculation concerning his conduct.